COUCH v. ROCKAFELLOW, EXECUTRIX.

4-7116                                            172 S. W. 2d 920

Opinion delivered July 5, 1943.

1154

*Jay M. Rowland,* for appellant.

*Martin, Wootton & Martin,* for appellee.

ROBINS, J.   Appellant by his complaint filed in circuit court sought to recover from appellee, Frances W. Rockafellow, as executrix of the estate of William B. Rockafellow, deceased, the sum of $750, and from appellees, Gil H. Wootton and Francis Joseph Carroll, as trustees of the estate of Charles A. Rockafellow, deceased, the sum of $750, said sums being alleged to be due appellant for services rendered by appellant to appellees in connection with preventing a "forfeiture" of the right to use hot water from the government reservation in Rockafellow hotel and bath house property situated in Hot Springs. The answers of appellees denied all material allegations of the complaint. On trial before the court sitting as a jury, no testimony was offered on either side, except that of appellant, and from a judgment in favor of appellees this appeal is prosecuted.

The testimony of appellant, which apparently was a full and frank statement of the matter, established the following facts: Appellant, who is an investment broker with offices in Little Rock and Hot Springs, began negotiations with appellees in the early fall of 1939 in regard to a disposition of this bath house and hotel, which had been closed in 1938. At first it was planned to sell the property, but appellant persuaded appellees that it would be more desirable for them to lease it. Appellant proposed to organize a corporation, in which he and his associates would be stockholders, for the purpose of leasing the property from the appellees. It was found necessary, in order to obtain from the federal government the right to use hot water in connection with the bath house and hotel, that certain requirements of the government as to improvements be met, and appellant and his associates had conferences with the federal authorities, in which the necessary improvements were discussed, which discussions, as appellant believed, resulted in a withholding of cancellation by the federal government of the right to

use the hot water on this property. At the time appellant began his negotiations with appellees they indicated to him that they were interested in appellant's proposed plan to obtain a lease of the property for the corporation which he was to organize. In December, 1941, one of the appellees called appellant over long distance 'phone and offered to make the lease to him or his corporation in accordance with his tentative proposal, and appellant replied that he was not in a position to accept the offered lease. Appellant was then advised that appellees had an opportunity to make a. lease to another party, and that, since appellant was not ready or willing to accept the lease for himself and his associates, appellees would proceed to contract with the other party; and this was done.

Appellant did not assert that he had any contract for compensation for his services. He testified: "Nothing was ever paid me for my services and they didn't agree to pay me anything. There wasn't any written contract, or any contract at all; there was a mutual effort to work something out and every effort on my part was fully known to the Rockafellow interests and I was never told to cease firing or stop in my efforts to work something out until I received a telephone call and of course I quit then. . . . It is for the services rendered in preparing a plan to operate the bath house and preventing the hot water lease from being canceled that I am claiming compensation. I feel that my efforts were largely responsible for or contribute largely for the continuation of the water rights and the working out of a lease agreement."

In support of his contention that under the facts proved appellant is entitled to recover on an implied contract, appellant cites the decision of this court in the cases of *Bailey* v. *Fenter,* 176 Ark. 1075, 5 S. W. 2d 291, and *Nissen* v. *Flournoy,* 160 Ark. 311, 254 S. W. 540. Without reviewing those cases in detail we deem it sufficient to say that the fact situations presented in those cases were not similar to that in the case at bar; and in the case of *Nissen* v. *Flournoy, supra,* Mr. Justice HART, speaking for the court, said: "No hard and fast rule can be laid down, and every case must be governed by its peculiar circumstances. It is incumbent upon the claimant to show

that, at the time the services were rendered, it was expected by both parties that she should receive compensation, . . ."

There is nothing in the testimony of appellant which indicates that appellees expected to compensate appellant for any services rendered by him in connection with the proposed lease.

In the case of *Bercher* v. *Gunter*, 95 Ark. 155, 128 S. W. 1036, the court said: "One cannot be forced to pay for something he did not contract for, either expressly or impliedly." The rule as to services rendered under an implied contract is thus stated in American Jurisprudence, vol. 12, p. 500, 502: "An implied contract between two parties is only raised when the facts are such that an intent may fairly be inferred on their part to make such a contract . . ., and the person benefitted must do something from which his promise to pay may be fairly inferred." In 71 Corpus Juris, p. 40, it is said: "One who renders services to another voluntarily is not, in the absence of an express promise to pay, or circumstances from which a promise will be implied in fact or in law, entitled to compensation therefor, . . ."

Under appellant's statement of the matter, everything done by him was for the sole purpose of making possible a lease from appellees to a corporation which he proposed to organize and of which he was to be a stockholder; and, if this contemplated arrangement had been carried out, appellant would not have claimed any compensation for his services. While appellant testified that he had stated in one of his conferences with appellees that he did not want to do the work incident to a retention of the water rights and then have the appellees deal with other people, and that, if they did deal with someone else he thought he should be compensated in some way, yet he did not testify that there was any assent by appellees to this statement of his such as would render them liable; and this statement might well have been understood by appellees merely as an insistence that the lease, whenever consummated, should be made to him or his company. Before appellees made the lease to the other party, they called appellant and apparently gave him an opportunity

to have the lease made to him or his associates, and, when he stated that he was unable to accept the lease at that time, appellees then made the lease to the other party. Appellant did not contend that he was entitled to an option on a lease for any length of time, and there is nothing in the record to show that, after he had been working on the matter two years and was still not ready to consummate the lease when it was offered to him, the action of appellees in giving the lease to another party was so arbitrary or unreasonable as to render them liable in the premises. Furthermore, there was no competent evidence on which the court could have based a finding that the alleged benefit to appellees—the withholding of cancellation of the water rights—occurred as a result of appellant's services. His testimony as to that phase of the matter amounted merely to a statement of his own conclusions, and he did not detail any facts which would furnish a logical basis for such belief, however honest it might have been. The judgment of the lower court was correct and is affirmed.